UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20800-Civ-COOKE/TURNOFF

ELITE FLORAL AND PRODUCE, LLC )
a Delaware limited liability company; )
EYAL BALVA, a Maryland Resident; and )
SIGAL BALVA, a Maryland Resident, )
)
           Plaintiffs, )
)
    vs. )
)
EXOTIC BLOOMS CORPORATION, )
a Florida corporation; and BALAGAN, )
LLC, a Florida limited liability company, )
)
           Defendants. )
)
_____ )

**MOTION OF COUNTER-PLAINTIFF**
**FOR PRELIMINARY INJUNCTION**

      Counter-plaintiff, EXOTIC BLOOMS CORPORATION, ("**Exotic Blooms**") moves, in accordance with Fed. R. Civ. P. 65, for the Court to enter a preliminary injunction, and to grant an evidentiary hearing on an expedited basis due to the imminent irreparable injuries being suffered by Exotic Blooms.  In support of the granting of an expedited hearing and the granting of a preliminary injunction, Exotic Blooms submits as follows:

      1.     Exotic Blooms is a Miami importer and seller of floral products to retail distributors.  On December 29, 2012, Exotic Blooms entered into an agreement ("Agreement"), in effect, selling some of the assets of Exotic Blooms' Maryland affiliates, Flowers by Daniel, LLC ("FBD"), and Exotic Flowers Worldwide, LLC ("Worldwide")(collectively referred to as the "Exotic Group"), to Eyal Balva ("Eyal") and his company, Elite Floral and Produce, LLC ("Elite")(Exhibit 1 to the accompanying

memorandum).  The principal and owner of the Exotic Group is Yehuda Balva, and Eyal is Yehuda's younger brother.

2.     In exchange (in part) for Exotic Group's selling FBD's customer list, inventory and equipment to Elite and Eyal, it reasonably required the latter to enter into a non-circumvention/non-compete covenant to protect the legitimate business interests of Exotic Blooms.  This includes a prohibition against circumventing Exotic Blooms and going directly to the suppliers of floral products to Exotic Blooms in Ecuador, Costa Rica, Colombia and Mexico.

3.     Within one and a half months of signing the Agreement and obtaining the assets of the Maryland affiliates of Exotic Blooms, Eyal and Elite violated the Agreement.

4.     As further set forth in Counts I and IV of Exotic Bloom's counterclaim (D.E. 7), and the Declaration of Yehuda Bavla being submitted with the memorandum accompanying this motion (Exhibit 2, thereto), Eyal and Elite have engaged in multiple defaults of the Agreement, not the least of which is failure to pay on time for goods as provided in the Agreement.

5.     To add further insult, while Eyal and Elite seek declaratory relief in their Complaint asking whether they are allowed to compete for and solicit the suppliers of Exotic Blooms  (D.E. 1, Count VI), they have in fact already violated the Agreement by soliciting the suppliers of Exotic Blooms.  In effect, Eyal and Elite merely ask the Court's after-the-fact ratification of the violation of the restrictive covenant they are already engaging in, to Exotic Blooms irreparable injury.

6. If not stopped now, through prompt injunctive relief, Exotic Blooms will be irreparably harmed, since it will ruin Exotic Blooms' upcoming 2012 Mother's Day season which along with Valentine's Day are the two "peak" seasons in the fresh-cut flower industry. To be clear, it was Eyal and Elite's breaches in failing to promptly pay for floral products for the 2012 Valentine's day season, and their apparent decision to use the funds belonging to Exotic Blooms to finance their competition for Exotic Blooms' suppliers, and then to sue Exotic Blooms rather than pay, which has brought this entire matter before the Court. Elite and Eyal's unclean hands should not be rewarded.

7. Moreover, Exotic Blooms understands that as this motion is being filed, Eyal is traveling to Ecuador to not only solicit Exotic Bloom's suppliers in person, but also to recruit Exotic Blooms' employee who handles the suppliers in Ecuador.

8. Through the Agreement's non-compete restrictive covenant, Elite and Eyal are prohibited from violating the legitimate business interests of Exotic Blooms developed through over 27 years of goodwill.

9. Specifically, Elite and Eyal agreed in Section 4 of the Agreement, that neither would "induce or cause others to induce any client, customer or supplier of [the Exotic Blooms parties] to leave any business relationship with the [Exotic Bloom parties] including but not limited to Wal-Mart and any producer, grower, supplier, shipper or other service provider . . ." In addition, Elite and Eyal agreed to neither directly nor indirectly contact, solicit, engage, purchase, or transact any business with any current suppliers, producers, growers, and/or farms of any floral products or other products sold by Exotic Blooms. It could not be clearer.

10. Yet, as shown in the Declaration of Yehuda Balva (which is Exhibit 2 to the memorandum), Elite and Eyal have clearly violated the restrictive covenant, regardless of claiming uncertainty whether they can or cannot do so, as claimed in seeking Declaratory Relief under Count VI of their Complaint. (D.E. 1).

11. The time period requiring that Eyal and Elite refrain from soliciting or using Exotic Blooms' suppliers is reasonable given the key role, including the acquisition of confidential information and trade secrets obtained by Eyal in managing the businesses of Exotic Bloom's Maryland affiliates while Yehuda Balva was fighting cancer.

12. The geographical scope of the non-circumvention/non-compete covenant is also reasonable. The relevant territories are the geographic areas where Exotic Blooms' actual suppliers, growers, farms and producers are; namely, in Ecuador, Colombia, Costa Rica and Mexico. Accordingly, Elite and Eyal must be prohibited from inducing or causing others to induce the suppliers of Exotic Blooms in those territories to leave any business relationship with Exotic Blooms, and from soliciting them.

13. The importance of the non-compete/non-circumvention covenant, which is reasonable in time, area and line of business, cannot be overstated because it is reasonably necessary to protect the legitimate business interests of Exotic Blooms. Indeed, Elite and Eyal specifically agreed that if there was a breach or threatened breach of this covenant, Exotic Blooms and Balagan would "not have an adequate remedy at law and . . . shall suffer irreparable harm." Elite and Eyal expressly agreed that Exotic Blooms and Balagan would be entitled to obtain a temporary and permanent injunction restraining Elite and Eyal from breaching this covenant. Otherwise, Elite and

Eyal would have been free to use the information and specialized training obtained by Eyal in his position of trust and confidence within Exotic Bloom's affiliates to circumvent and irreparably harm Exotic Blooms after it in effect put Elite in business by supplying products, customers, inventory and equipment.

14. More specifically, the covenant in Section 4 of the Agreement provides that during the initial 7 year period covered under the Agrement, Eyal and Elite may not (a) induce or cause others to induce any employee or agent to leave the employ or terminate the business relationship with Exotic Blooms and Balagan, (b) interfere with or cause others to interfere with the relationship between Exotic Blooms and Balagan, on the one hand, and any employee or agent thereof, and (c) employ or cause others to directly or indirectly employ, or otherwise engage as an employee, independent or otherwise, any employee or agent of Exotic Blooms.

15. As further set forth in the Declaration of Yehuda Balva, absent the restrictive covenant at issue in this case, he would not have handed over to Eyal the retail business of Exotic Bloom's affiliates as he did by handing over equipment, inventory, an established demand, and an established supply.

16. The contractually specified restraint prohibiting Eyal and Elite from circumvention and competition for suppliers Exotic Blooms is reasonably necessary to protect the legitimate business interests of Exotic Blooms developed through Yehuda Balva's success in the wholesale flower industry of more than 27 years, which has allowed Exotic Blooms to secure product from its suppliers at very competitive rates.

The non-compete portion of the Agreement is thus the core foundation for Exotic Blooms' business.

17.As set forth in the Declaration of Yehuda Balva (Exhibit 2 to the memorandum being filed in support of this motion), in direct violation of the restrictive covenant, Eyal and Elite are currently soliciting farms, producers, and suppliers doing business with Exotic Blooms in direct violation of the Agreement.

18.As Elite and Eyal agreed, a breach of this covenant would result in irreparable harm to Exotic Blooms for which there is no adequate remedy at law. Indeed, pursuant to §542.335, Fla. Stat., "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."

19.Exotic Blooms has no adequate remedy at law because the amount of damages is difficult to determine, is ongoing, and of a character that may not, in whole or in part, be remedied by payment of money and Eyal and Elite have previously agreed that there is no adequate remedy at law.

20.The threatened and actual injury to Exotic Blooms outweighs any possible harm to Eyal and Elite.

21.Exotic Blooms has a clear legal right to the requested relief.

22.The public interest is served by the issuance of a preliminary and permanent injunction, as Florida has determined by the will of its legislature that temporary and permanent injunctive relief is an appropriate remedy to enforce a restrictive covenant.

WHEREFORE, for the foregoing reasons as more fully set forth in the accompanying memorandum and exhibits thereto, Exotic Blooms respectfully requests that this Court enter an Order granting:

1. a preliminary and permanent injunction against Elite and Eyal enjoining them, from the date of the Order to February 20, 2019, from

    (a) inducing or causing others to induce any client, customer (including Wal-Mart) or supplier, producer, service provider, farm, shipper, and/or grower in a contractual or business relationship with Exotic Blooms as of February 20, 2012, to leave any business relationship with Exotic Bloom,

    (b)(i) inducing or causing others to induce any employee or agent to leave the employ or terminate the business relationship with Exotic Blooms, (ii) interfering with or causing others to interfere with the relationship between Exotic Blooms, on the one hand, and any employee or agent thereof, and (iii) employing or causing others to directly or indirectly employ, or otherwise engage as an employee, independent or otherwise, any employee or agent of Exotic Blooms, and

    (c) directly or indirectly contacting, soliciting, engaging, purchasing, or transacting any business with any suppliers, producers, growers, and/or farms of any floral products or other products sold by Exotic Blooms and doing business with Exotic Blooms as of February 20, 2012, the date of the Event of Default;

2. grant attorneys fees and costs incurred in obtaining the temporary and permanent injunctions, and

3. any further relief as this Court deems just and appropriate.

In sum, Exotic Blooms requests that this Court grant a expedited evidentiary hearing on the motion for preliminary injunction to enjoin Eyal Balva and Elite from further soliciting, enticing away or using any current suppliers or customers of Exotic Blooms.

Respectfully submitted,

**WNF LAW, P.L.**
**Waserstein Nunez & Foodman**
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone: (305) 760-8500
Facsimile:  (305) 760-8510


By:   /s/ Luis S. Konski
          Luis S. Konski
          Florida Bar No. 207837
          lsk@wnflaw.com
          Dennis J. Wouters
          Florida Bar No. 28692
          djw@wnflaw.com

*Exotic Blooms Motion*
*for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page **9** of **9***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed by CM/ECF with the Clerk of Court and on all parties this 16th day of March 2012.

    /s/ Luis S. Konski
    Luis S. Konski