UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20800-Civ-COOKE/TURNOFF

| | |
|---|---|
| ELITE FLORAL AND PRODUCE, LLC | ) |
| a Delaware limited liability company; | ) |
| EYAL BALVA, a Maryland Resident; and | ) |
| SIGAL BALVA, a Maryland Resident, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| EXOTIC BLOOMS CORPORATION, | ) |
| a Florida corporation; and BALAGAN, LLC, | ) |
| a Florida limited liability company, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**REPLY OF COUNTER-PLAINTIFF
IN SUPPORT OF MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Pursuant to Fed. R. Civ. P. 65(a) and Fla. Stat. § 542.335, Counter-plaintiffs, Exotic

Blooms Corporation ("Exotic Blooms") submits its reply in support of their motion for

preliminary injunction (D.E. 9) and in response to the Opposition to the Motion for Preliminary

Injunction (D.E. 27, 28) as follows:

<u>Introduction</u>

Since the filing of the original Motion for Injunction on March 16, 2012 (D.E. 9) and the

Motion for Expedited Hearing on March 21, 2012, Counter-defendants Eyal Balva ("Eyal") and

Elite Floral and Produce, LLC ("Elite") (collectively, the "Eyal Parties") have not stayed idle.

Case 1:12-cv-20800-MGC   Document 35   Entered on FLSD Docket 04/12/2012   Page 2 of 12

*Exotic Blooms Reply in Support*
*of Motion for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page 2 of 12*

The Eyal Parties have engaged in full and frontal attacks to wreck and irreparably injure Exotic Blooms.[1]

Since March 21, 2012, Eyal and Elite have arranged to circumvent suppliers of Exotic Blooms (Ex. A, ¶¶ 8-10, 20-22); have violated Exotic Bloom's registered trademark, Forever Blossoms (Ex. A, ¶¶ 23-24); and have used at least one key employee of Exotic Blooms (Ex. A, ¶ 25); each a separate and direct violation of the restrictive covenant they agreed was reasonable and which the parties executed only three months ago (Agreement, Section 4).  Because of all this, Exotic Blooms has been placed in mortal peril.

In fact, Yehuda Balva ("Yehuda") could not be at the hearing on April 9, because he was in Ecuador and Colombia attempting to reinstate orders with Exotic Bloom's suppliers the Eyal Parties have diverted, and has so far found that Eyal has prevailed upon the suppliers to supply Elite to the almost absolute exclusion of Exotic Blooms. (Ex. A, ¶¶ 4, 8-10) For example he discovered at the same time as the hearing was held that his 15-year supplier, Decoflor, cancelled his order of 500,000 stems, while continuing to supply Elite. (Ex. A, ¶¶ 10, 20).

At the hearing on April 9, 2012, the Magistrate Judge expressed a desire that the parties come to an accommodation that the Eyal Parties not use the suppliers of Exotic Blooms pending the hearing on the preliminary injunction.  Considering the evidence set forth below, not only is

---

[1] Adding further injury, contrary to the Eyal Parties' representation to the Magistrate at the hearing on April 9, 2012, **Exotic Blooms never stopped supplying flowers to Elite**.  Exotic Blooms only stopped supplying flowers "on credit", as it has a right to do under the Uniform Commercial Code, (Fla. Stat. § 672.703) as well as the Agreement (Section 9.b) when Elite failed to pay for flowers on time.  Exotic Blooms, without waiving any of its remedies as a result of the material breaches of the Agreement committed by the Eyal Parties, offered to continue supplying Elite with flowers if it prepaid for them.  Elite has since continued to withhold timely payments which it admits were due to be paid no later than March 15, 2012. The Elite Parties have thus been using monies admittedly owed to Exotic Blooms to not only sponsor its operations, but also to defend against this injunction motion.

Case 1:12-cv-20800-MGC   Document 35   Entered on FLSD Docket 04/12/2012   Page 3 of 12

*Exotic Blooms Reply in Support*
*of Motion for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page 3 of 12*

there no likelihood that the Eyal Parties will do as requested, they have done everything to intentionally harm Exotic Blooms and brazenly believe that the Court will not stop them.

Based on the Elite Parties' continued blatant violations of the restrictive covenant, Exotic Blooms respectfully requests that, in light of the urgency, this Court, enter a Temporary Restraining Order ("TRO") pending an evidentiary hearing.  Fed. R. Civ. P. 65(b)(allowing issuance of a TRO based on affidavits clearly showing immediate and irreparable injury, loss or damage, pending an evidentiary hearing on the preliminary injunction).  This is particularly appropriate as the Magistrate Judge expressed a desire that the parties come to an accommodation that Elite not use Exotic Blooms' suppliers while the preliminary injunction motion is pending.  As Elite and Eyal have unfortunately acted in utmost bad faith, immediate relief in the form of a TRO is not only appropriate, but necessary.

As set forth in the second declaration, Yehuda's business is not the small local corner flower vendor.   It is a business with 28 years of existence, which through hard work, inventiveness, market research, and good reputation has grown to be one of the largest mass-marketers of flowers in the United States with the goodwill that comes with it. (Ex. A, ¶¶ 6, 8-11, 16-19). Irreparable injury must be presumed, based on the Elite Parties' (1) having clearly violated the Agreement by diverting supplies of floral products from Exotic Blooms' suppliers, (2) having solicited and used at least one key employee of Exotic Blooms, who has taken a laptop computer with private and confidential proprietary information of Exotic Blooms, and (3) having violated the businesses' Forever Blossoms, trademark. (Ex. A, ¶¶ 8-10, 20-22, 23-25).

Contrary to the Eyal Parties' arguments, Exotic Blooms can well satisfy the requirements for a preliminary injunction.  (D.E. 27, pages 2 – 3).  Indeed, the cases cited by the Eyal Parties

Case 1:12-cv-20800-MGC   Document 35   Entered on FLSD Docket 04/12/2012   Page 4 of 12

*Exotic Blooms Reply in Support*
*of Motion for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page **4** of **12***

only determined that an injunction was not warranted, after an evidentiary hearing; something they would deny Exotic Blooms.

## I.        Legitimate Business Interests

First, the Court should consider this is an unusual restrictive covenant case.  Usually, restrictive covenants are litigated in two scenarios:  Where the employer seeks to enforce the restrictive covenant against the weaker employee who signed a restrictive covenant.  In those cases the court often sides with the employee, who is in a weaker position.  The second situation is where the buyer attempts to enforce a non-compete agreement against the seller who entered into an arm's length transaction, both sides knowing what they entered into, where the buyer attempts to stop the seller from competing in the area or clientele which the seller sold him for valuable consideration.  Here, where there was the sale of assets of a business, with the seller and buyer on an equal footing, they were free to agree to prohibit ***the buyer*** from plundering the seller's suppliers which is the source of the seller's goodwill, especially where the buyer had been in a position of trust and confidence with the seller and was privy to confidential business information, including such information as it related to the suppliers.

There is good reason why in its entire Opposition (D.E. 27), the Eyal Parties has tried to blur the difference between the two distinct sets of cases.  There is a legitimate business interest in broadly enforcing agreements reached in the course of a sale of a business, because it was clearly an arm's length transaction, and parties can negotiate whatever limits they wish to put on themselves.  *USI Ins. Services of Florida, Inc. v. Pettineo,* 987 So. 2d 763, 766-67 (Fla. 4th DCA 2008) (emphasizing the broad distinction between a restrictive covenant that is part and parcel of an asset purchase agreement and one involving an employment agreement); *Henao v.*

*Professional Shoe Repair, Inc.,* 929 So. 2d 723, 727 (Fla. 5th DCA 2006) ("A restrictive covenant which otherwise satisfies the dictates of the statute is not unenforceable because it constitutes a restraint on the **buyer** of a business or shares of a corporation.") (emphasis provided).  Where the employer/employee relationship is involved, however, the courts have construed the employer's protection more narrowly.  Indeed, Fla. Stat. § 542.335. ("Valid Restraints on Trade") provides that, as to restraints against an employee, a mere six months in duration is presumed reasonable, and more than two years unreasonable, while, as to restraints involving the seller of assets of a business (the situation most analogous to the case *sub judice*), there is a presumption that a restraint of three years in duration is reasonable and over seven years unreasonable (and as to the protection of trade secrets, it is even longer – ten years).  *See* sections 542.335(1)(d)(1), (d)(3) and (e).  The fact that the Agreement here expressly involves the sale of assets of two businesses, FBD and Worldwide, suggests that there is a legitimate business interest in the restrictive covenant prohibiting the Eyal Parties from stealing Exotic Blooms' suppliers.

The Eyal Parties' claim that prohibition of solicitation of suppliers is not akin to customers, and therefore not a legitimate business interest, citing *Southern Wine and Spirits, Inc., v. Simpkins*, 2011 WL 124631 at *3-4 (S.D. Fla., Jan. 14, 2011) ("*Southern Wine*"), and *Concrete Surface Innovations, Inc., v. McCarty*, 2010 WL 1930971 1(M.D. Fla. May 13, 2010). ("*Concrete Surface*").  Neither case involves the sale of assets, but a restrictive covenant incidental to an employment agreement, and the courts came to the conclusions only after an evidentiary hearing.  In essence, under those specific conditions fleshed out through evidence, the protection of suppliers was deemed not a legitimate business interest.  Since a buyer can be precluded from competition as part of the sale of assets, such as here, *Henao v. Professional*

*Shoe Repair,* 929 So. 2d at 727, the buyer's voluntary entry into the non-circumvention restriction of suppliers, such as here, is a legitimate interest entitled to protection.

In addition, in *Concrete Surface*, the restrictive covenant is dramatically different from the one here. Specifically, the restrictive covenant in the case cited by the Eyal Parties stated that the employee was barred for a period of three years from '"solicit[ing], contact[ing], or respond[ing] to requests for services from [Concrete's] present, former or prospective customers or clients or successors theron behalf of himself or . . . any other business or entity that provides or engages in any of the services furnished or conducted by' Concrete." 2010 WL 1930971 *4. The Court then held the terms "customers or clients" in the restrictive covenant simply do not include "suppliers."   Accordingly, the employer, by seeking to enjoin the employee from contacting its two suppliers, failed to identify any person or entity within this provision that the employer "solicited, contacted, or responded to."  Id. at *4-6.  Unlike the case of *Concrete Surface,* the Eyal Parties, in the context of an arm's length sale of assets of a business, expressly agreed to non-circumvention by agreeing not to solicit suppliers of Exotic Blooms.

As to *Southern Wine*, it relied on *Concrete Surface* to hold that Fla. Stat. § 542.335(1)(b) of the statute does not contemplate prospective and existing relationships with suppliers as a legitimate business interest.  However, the case involved an employee who left his employment to join a competitor in the same line of business, and solicited employees of the former employer.  The restrictive covenant barred the employee from participating in any "Restricted Business Activity", defined as ranging from the wholesale sale of alcoholic beverages and non-alcoholic beverages to the soliciting of the former employer's employees.  Significantly, the court in *Southern Wine* also held that "[t]here is a substantial likelihood of success that Southern

Wine will succeed in showing that it has a legitimate business interest in protecting the confidential business information that [the employee] had access to while at Southern Wine." 2011 WL 124631 at *3.  Likewise in this case, one of the legitimate business interests sought to be protected is the valuable confidential business information and/or trade secrets that in turn involves the identities of and arrangements with current and new suppliers, producers, growers, and farms used by Exotic Blooms. (Ex. A, ¶¶ 5, 12, 16-18).  The Eyal Parties have been able to breach the non-circumvention exactly because of their superior knowledge of protectable information that Eyal acquired while heading Flowers By Daniel, a position of trust and confidence that his brother Yehuda had placed him in.  That is why the non-circumvention in the sale of assets agreement was absolutely necessary.

Further, as set forth by Yehuda in his original declaration (D.E. 9-3, Ex.t 2) as amplified in his second declaration (Ex. A, ¶¶16-18), there are other independent legitimate business interests being protected through the non-solicitation clause; namely, extensive trade secrets, proprietary information  and the extensive training Eyal received.  The best evidence of the effectiveness of the trade secrets, confidential business information and training imparted on Eyal, which he is precluded from using, is Eyal's demonstrated ability to go from no suppliers in or about December 27, 2012, to decimating Exotic Blooms' supply lines in less than a month, and three months after getting FBD and Worldwide's assets.  (Ex. A, ¶¶ 16-20).

All that movant needs to initially establish that the restrictive covenant is enforceable is to "plead and prove the existence of one or more of the legitimate business interests justifying the restrictive covenant."  Fla. Stat. § 542.335(1)(b); *USI Ins. v. Pettineo*, 987 So. 2d at 766. Having established this, the burden shifts to the Eyal Parties to establish that the restrictive

covenant is overbroad or not reasonably necessary. *USI Ins. v. Pettineo,* 987 So. at 766. Fla. Stat. § 542.335(1)(c); *See Proudfoot Consulting*, 576 F. 3d 1223, 1231 (S.D. Fla. 2009). This they cannot do.

## II.   The Restrictive Covenant is Neither Overbroad Nor Unnecessary.

Although the burden is on the respondent, the Eyal Parties, the restrictive covenant is not overbroad or unnecessary. (D.E. 27, page 10). There are statutory presumptions as to what time is reasonable in employment, franchises and the sale of assets (the latter as to restrictions on the seller, but it is the most analogous to this case). Fla. Stat. § 542.335(1)(d)(1), (2) and (3). It is only that, however. It is a "presumption" under very specific circumstances; none of which are present here (but, by analogy, the closest one is the sale of asset by a seller, and there is a presumption that a restriction for three years is presumed reasonable, and one exceeding seven years is presumed unreasonable). But, we do not need to even get there. First, if the restrictive clause is overbroad, overlong or otherwise not reasonably necessary to protect legitimate business interests, the court is obligated to modify the restraint and grant only the relief reasonably necessary. Fla. Stat. § 542.335(1)(c); *Environmental Services, Inc. v. Carter*, 9 So. 3d 1258, 1262 (Fla. 5th DCA 2009)("If the restraint is overbroad or unreasonable, the court 'shall ***modify*** the restraint and grant only the relief reasonably necessary to protect such [legitimate business] interest or interests." (emphasis added)).

But here, as to the objection that the time is too long (seven years) the question is not material under the current facts. The Eyal parties did not wait seven, five, three, or even two years to materially violate the covenant not to circumvent Exotic Blooms' suppliers. Within two months of having entered into the Agreement and its covenant not to solicit suppliers, they

Case 1:12-cv-20800-MGC   Document 35   Entered on FLSD Docket 04/12/2012   Page 9 of 12

*Exotic Blooms Reply in Support*
*of Motion for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page 9 of 12*

violated it.  Clearly, whether the covenant can or should be enforced for seven, or even three years is a distraction when respondents have clearly violated it within the short period of two months.

The geographic limitation is, equally, a non-issue.  The Eyal Parties misread the geographic limitations to exaggerate its breadth. (D.E. 27, page 13).  Contrary to the overbroad reading by the Eyal Parties, the geographic limitation of what suppliers the Eyal Parties can solicit is not **all suppliers** in Ecuador, Colombia, Costa Rica and Mexico; only those that supplied Exotic Blooms.  As Eyal claims there are "hundreds" of suppliers, why then have they raided only the few suppliers which are the suppliers of Exotic Blooms which developed these suppliers over 28 years?  (Ex. A, ¶¶ 10, 16-22).  It is because those are the ones that Eyal knows about because of the confidential business information/trade secrets he was privy to while holding the position of trust and confidence in Exotic Bloom's affiliate.  As set forth in the original declaration of Yehuda, the geographic market for suppliers in the Agreement (Section 4) is limited by its own terms to only the current suppliers of Exotic Blooms in a defined territory. (D.E. 9-3, ¶ 21).  The Eyal Parties remain free to use the hundreds of other suppliers they claim are available.  (D.E. 27-1, ¶ 50).  Indeed, if it be true that there are hundreds of suppliers, the plunder of Exotic Blooms' select few suppliers would have to be one borne out of the Eyal Parties' malice.

Finally, the line of business is reasonable. (D.E. 27, page 14).  As attested to by Yehuda, the line of business he competes in is a highly specialized niche business (Ex. A, ¶¶ 8, 16-19). Again the Eyal Parties misread the prohibition in the restrictive covenant.  Not all competition is prohibited; only competition for the highly specialized niche business in 40 cm roses and also

Case 1:12-cv-20800-MGC   Document 35   Entered on FLSD Docket 04/12/2012   Page 10 of 12

*Exotic Blooms Reply in Support*
*of Motion for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page **10** of **12***

floral bouquets which Exotic Blooms has developed and nurtured, and to which prohibition the Eyal Parties specifically agreed as part of the asset sale of the businesses. (Ex. A, ¶¶ 8, 16-19). Parties to the sale of a business are free to forge agreements "which have for their object the removal of a rival and competitor in a business." *USI Ins. v. Pettineo,* 987 So. 2d at 767, citing *Masari v. Salciccia*, 136 So. 522, 524 (Fla. 1931). More, the line of business is highly specialized as attested by Yehuda. (Ex. A, ¶¶ 8, 16-19). Even if the party were not to operate in the line of business, because the transaction involves the sale of a business, the line of business sought to be restricted is reasonable. *USI Ins. v. Pettineo,* 987 So. 2d at 767 (when the petitioner no longer sells insurance policies in the line of business, because the restriction was part of the consideration in the sale of a business, the restriction is appropriate and reasonable).

### III.      Breaches of the Agreement

As to Eyal's claims that Exotic Blooms breached first, the only material breaches have been the Eyal Parties, and the breaches began with their refusal to timely pay for product followed, in short order, with violation of the restrictive covenant through a hostile takeover of Exotic Blooms suppliers; then violation of the registered trademark and then the use of a former employee of Exotic Blooms. (Ex. A, ¶¶ 27-40).

### IV.      Exotic Blooms' Irreparable Injury

Fla. Stat. § 542.335 provides that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." See Fla. Stat. § 542.335(1)(j). As set forth above and in the original motion (D.E. 9) the restrictive covenant is enforceable. Imminent harm to Exotic Blooms' goodwill is an irreparable injury that is difficult to quantify. *International Hair and Beauty Systems, LLC v.*

Case 1:12-cv-20800-MGC   Document 35   Entered on FLSD Docket 04/12/2012   Page 11 of 12

*Exotic Blooms Reply in Support*
*of Motion for Preliminary Injunction*
*Case No.12-20800-Civ-Cooke/Turnoff*
*Page 11 of 12*

*Simply Organic, Inc.,* 2011 WL 5359264 at * 9 (M.D. Fla. Sept. 21, 2011); *Leedom Management Parties, v. Perlmutter,* 2011 WL 6719683 at *1 (M.D. Fla. Dec. 21, 2011). Consequently, as the Court must presume irreparable injury and irreparable injury to Exotic Blooms' goodwill is imminent as testified to by Yehuda (Ex. A, ¶¶ 4-9, 12, 17-19) and an expedited hearing, or at the very least a Temporary Restraining Order, is appropriate pending a hearing.

It is clear that Exotic Blooms has suffered and continues to suffer irreparable harm as a proximate result of the Eyal Parties' breaches of the restrictive covenant. Their supply and their goodwill has been damaged and will be even more damaged if immediate relief is not granted.

As set forth in Yehuda's declaration, the list of suppliers the Eyal Parties have diverted and the consequent imminent and irreparable harm to Exotic Blooms' goodwill has only grown since the motion for preliminary injunction motion was filed (Ex. A, ¶¶  4-9, 12, 17-19 D.E. 9). Clearly damage to the business's goodwill is irreparable harm. Thus irreparable harm is both presumed and can be independently shown.

Based on *Southern Wine* the Eyal Parties argue that under the *Erie* doctrine no presumption of irreparable harm is appropriate because federal procedural law applies. (D.E. 27, page 17). A statutory presumption and the shifting of burdens in substantive statutes, such as the restrictive covenant statute, is not procedural, but substantive. *Dick v. New York Life Ins. Co.,* 359 U.S. 437, 443, 446-7 (1959). The, Eleventh Circuit has affirmed the restrictive covenant presumption. *Proudfoot Consulting Company v. Gordon,* 576 F.3d 1223, 1231 (Fla. 11th Cir. 2009); *Loans of America Fl., LLC Rapid Auto Loans, LLC*, 2010 WL 275336 at *5 (S.D. Fla. 2010). Otherwise, Counter-plaintiff relies on its presentation in its original motion. (D.E. 9).

**WHEREFORE**, based on its Motion for Preliminary Injunction (D.E. 9) and the instant Reply, Exotic Blooms requests that this Court set an expedited hearing on the motion for preliminary injunction or enter a Temporary Restraining Order to maintain the *status quo ante* pending the hearing on the motion for preliminary injunction.

Respectfully submitted,

**WNF LAW, P.L.**
**Waserstein Nunez & Foodman**
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone: (305) 760-8500
Facsimile:  (305) 760-8510


By:     /s/ Luis S. Konski
          Luis S. Konski
          Florida Bar No. 207837
          lsk@wnflaw.com
          Dennis J. Wouters
          Florida Bar No. 28692
          djw@wnflaw.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed by CM/ECF with the Clerk of Court and on all parties this 12th day of April, 2012.


          /s/ Luis S. Konski
          Luis S. Konski